UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

TONYA PETERS MILLER,                )
                                    )
        *Plaintiff*,                )
                                    )
v.                                  )        No. 4:13-cv-90-HSM-SKL
                                    )
COMMISSIONER OF SOCIAL SECURITY,    )
                                    )
        *Defendant*.                )

## REPORT AND RECOMMENDATION

Plaintiff Tonya Peters Miller ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party moved for a judgment [Docs. 11 & 13] with supporting briefs [Docs. 12 & 14]. This matter is now ripe, and for the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 11] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 13] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.    ADMINISTRATIVE PROCEEDINGS

Plaintiff first filed previous applications for DIB and SSI on May 6, 2004, claiming disability beginning March 8, 2004 (Transcript [Doc. 6] ("Tr.") 214). Plaintiff's claims were denied initially and upon reconsideration, and she requested a hearing before an ALJ, which was held on September 12, 2006 by ALJ Ronald J. Feibus (Tr. 214, 226). ALJ Feibus also held a supplemental hearing on February 7, 2008 (Tr. 214). Plaintiff was represented by an attorney at both hearings (Tr. 214). ALJ Feibus issued an unfavorable decision on March 7, 2008, finding

that Plaintiff was not disabled from March 8, 2004 through March 7, 2008 because she could perform medium work activity and there were a significant number of jobs existing in the national economy that Plaintiff could perform despite her impairments (Tr. 226).

Plaintiff initially filed her current applications for DIB and SSI on April 29, 2010, again alleging disability as of March 8, 2004 (Tr. 175). Plaintiff's claim was denied initially and upon reconsideration, and she requested a hearing before an ALJ (Tr. 236, 251, 254, 257, 259). ALJ Michael R. Swan ("the ALJ") held a hearing on January 24, 2012, during which Plaintiff was represented by a non-attorney representative (Tr. 175; 194).[1] The ALJ issued an unfavorable decision on February 8, 2012, finding Plaintiff was not disabled from March 8, 2004 (the alleged onset date) through February 8, 2012 (the date of the decision) because she could perform a reduced range of light unskilled work and was capable of making a successful adjustment to work that existed in significant numbers in the national economy (Tr. 175-88). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 157-59). Plaintiff timely filed the instant action seeking judicial review of the Commissioner's unfavorable decision [Doc. 1].

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was 28 years old on her alleged disability date of March 8, 2004 (Tr. 186). Plaintiff has a high school education, and she is able to communicate in English (Tr. 186). She has past relevant work experience as a dental assistant and as a game room attendant (Tr. 207, 342, 360). Plaintiff stated that she was unable to work due to a combination of her lower back pain and her mental health problems (Tr. 198).

---

[1] The transcript inaccurately reflects that the representative was an attorney.

## B.    Medical Records

Plaintiff's arguments focus on the ALJ's consideration of the medical records provided by certain sources.  Only the portions of Plaintiff's medical records relevant to the parties' arguments will be addressed within the respective section of the Court's analysis below, but all relevant records have been reviewed.

## C.    Hearing Testimony

On January 24, 2012, the ALJ conducted a hearing in Plaintiff's case (Tr. 194-210).  The ALJ and a vocational expert ("VE") were present in person at the hearing in Chattanooga, Tennessee, and Plaintiff and her representative were present via video conferencing from the remote site in Tullahoma, Tennessee (Tr. 175, 196).  At the hearing, both Plaintiff and the VE testified.  The Court has carefully reviewed the transcript of the testimony at the hearing, however, only the portions of the hearing relevant to the parties' arguments will be addressed within the respective section of the Court's analysis below.

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

## A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'"  *Schmiedebusch v. Comm'r of Soc. Sec.*, No. 12-4316, 2013 WL 5749156, at *9 (6th Cir. Oct. 24, 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). The claimant bears the burden to show the extent of his or her impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

B.     The ALJ's Findings

At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since March 8, 2004, the alleged onset date (Tr. 178). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, seizures, a bipolar disorder, a post-traumatic stress disorder ("PTSD"), an attention deficit disorder, and obesity (Tr. 178). At step three, the ALJ found Plaintiff did not have any

4

impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 ("Listings") (Tr. 180). Specifically, the ALJ considered Listings 12.02, 12.04, and 12.06 as well as the "paragraph B" and "paragraph C" criteria (Tr. 180-81). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of unskilled light work, allowing for alternative sitting and standing every 30 minutes, with the following limitations: only occasional postural activity; avoiding heights and moving machinery in the workplace; performance of only simple tasks; rare contact with the general public; occasional contact with supervisors and coworkers; infrequent changes in a routine work setting; and no rigid production quotas (Tr. 181). At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work (Tr. 186). At step five, the ALJ noted that Plaintiff was a younger individual, 18-49, on the alleged onset date, had a high school education, and was able to communicate in English (Tr. 186). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 186). These findings led to the ALJ's determination that Plaintiff was not under a disability at any time from March 8, 2004, the alleged onset date, through February 8, 2012, the date of the ALJ's decision (Tr. 187-88).

## IV.     ANALYSIS

Plaintiff alleges the ALJ erred by: (1) failing to properly consider whether her impairments satisfy one of the Listings; (2) failing to properly review and consider all medical evidence in the record; (3) failing to properly consider the combined impact of her severe impairments; (4) failing to properly frame the hypothetical question to the VE; and (5) failing to elicit a reasonable explanation for the conflict between the VE's testimony and the Dictionary of

Occupational Titles ("DOT"). Plaintiff argues that the ALJ's errors require reversal and, if necessary, remand. Each of Plaintiff's arguments will be addressed below.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore,

6

the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.     Consideration of the Listings

Plaintiff alleges that the ALJ failed to properly consider the factors listed in paragraphs A and C in Listings 12.02, 12.04, and 12.06 as required, "except in a dismissive statement that the evidence 'fails to establish the severity of repeated episodes of decompensation as set forth in "paragraph C" criteria.'"  [Doc. 12 at Page ID # 1106 (citing Tr. 181)].  Plaintiff argues that paragraph C of Listings 12.02, 12.04, and 12.06 provide alternative criteria that, if satisfied, would meet the requirements of the Listings.  Plaintiff states that the ALJ considered only whether Plaintiff had repeated episodes of decompensation, and Plaintiff argues that the ALJ erred by not considering any of the alternative criteria.

In response, Defendant agrees that the ALJ did not recite all of the factors listed in paragraph C of Listings 12.02, 12.04, and 12.06, but Defendant contends that the ALJ is not required to articulate his analysis at step three of the sequential process.  Defendant notes that the ALJ did specifically state that he had considered each of these Listings and that Plaintiff's impairments did not satisfy the paragraph C criteria.

The Sixth Circuit has addressed this issue, finding that an ALJ does not have "a heightened articulation standard" for the analysis at step three of the sequential process.  *Bledsoe*

*v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (noting that case law does not support the plaintiff's contention that "the ALJ should spell out the weight he gave to each factor in his step three analysis").

> The ALJ did not err by not spelling out every consideration that went into the step three determination. The language of 20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue. It states that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a "listed impairment."

*Id.* at 411 (quoting 20 C.F.R. § 404.1526). Additionally, the Sixth Circuit has made it clear that even if an ALJ's step three conclusion was cursory, the decision is supported by substantial evidence if "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three." *Forrest v. Comm'r of Soc. Sec.*, --- F. App'x ---, No. 14-5421, 2014 WL 6185309, at *6 (Nov. 17, 2014).

Here, I find that the ALJ satisfied the requirements at step three of his analysis, because he reviewed the evidence of Plaintiff's impairments before finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. The ALJ specifically considered Listings 12.02, 12.04, and 12.06, and the ALJ stated that he considered the Paragraph B and C criteria. While the ALJ's written statement regarding his consideration of the Paragraph C criteria is brief, it is sufficient and supported by substantial evidence. I therefore find that the ALJ's step three analysis satisfied the requirements, as the ALJ need not spell out every consideration that went into the analysis. *See Bledsoe*, 165 F. App'x at 411.

### C.    Review and Consideration of the Medical Evidence

Plaintiff next argues that the ALJ failed to properly review and consider all the medical evidence in making his decision. Plaintiff specifically contends that the ALJ improperly considered Plaintiff's Global Assessment of Functioning ("GAF") scores; failed to address

8

medical records from several of Plaintiff's care providers; improperly discounted the mental health assessments in the record provided by Dawn M. Brandau, Ph.D., Andrea Gore, N.P., William C. Kerstetter, L.P.C./M.H.S.P.; and failed to consider the regulations included in the Listings for chronic mental health impairments. The Court will address each of these arguments in turn.

### 1. Plaintiff's GAF Scores

Regarding the ALJ's consideration of the GAF scores, Plaintiff argues that the significance of the GAF scores "cannot be understated," because the GAF scores are "a measure of a person's ability to function and adapt to the stresses experienced in life." [Doc. 12 at Page ID # 1108-09]. Plaintiff contends that her GAF scores of 25 to 55 show that she had serious symptoms and impairments, which the ALJ did not properly consider.

In response, Defendant contends that these GAF scores do not show the severity of Plaintiff's impairments and further argues that GAF scores are "subjective and may have little bearing on a claimant's ability to function in an occupational context." [Doc. 14 at Page ID # 1131].

A GAF score "is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). An ALJ is not required to consider a plaintiff's GAF score; the Commissioner has declined to endorse the use of GAF scores in Social Security programs, indicating that these scores have "no 'direct correlation to the severity requirements of the mental disorders listings.'" *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (citations omitted); *see also Kornecky*, 167 F. App.'x at 511 (citations omitted) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score. . . .");

9

*Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (concluding the ALJ's failure to address plaintiff's GAF scores does not, in itself, make the RFC inaccurate). Thus, Plaintiff's argument that the ALJ erred by failing to properly consider her GAF scores fails.

### 2. Plaintiff's Mental Health Records

Plaintiff states that the ALJ did not address Plaintiff's mental health records from Mr. Kerstetter, Plaintiff's mental health counselor; Ola M. Henson, an advanced practice nurse and Plaintiff's primary care clinician; and Dr. Alex A. Fider, a physician practicing psychiatry. Plaintiff contends that "[i]nstead, the Administrative Law Judge, in his decision, focused on the physical limitations that the Claimant suffered as a result of degenerative disc disease." [Doc. 12 at Page ID # 1111].

As to Plaintiff's statement that the ALJ failed to address Plaintiff's mental health records from certain care providers, Defendant does not respond regarding the records of Ms. Henson, an advanced practice nurse and Plaintiff's primary care clinician, or the records of Dr. Fider, a physician practicing psychiatry. Nevertheless, the Court has reviewed Plaintiff's contention that the ALJ failed to address the mental health records of these care providers and finds that the ALJ specifically addressed the mental health records of two of the three care providers, Mr. Kerstetter and Dr. Fider. The ALJ addressed Plaintiff's mental health records as follows:

> In addition to her physical impairments, the evidence further establishes a history of mental health treatment. In March 2008, the claimant presented to William C. Kerstetter, LPC/MHSP, wherein mental status examination reflected pressured speech and flight of ideas, resulting in a diagnosis of bipolar disorder (Exhibit B-6). In June 2008, the claimant presented to Alex A. Fider, M.D., a treating psychiatrist, reporting persistent symptoms of anxiety. Although mental status examination reflected an anxious and depressed mood, thought processes were assessed as goal directed, with Dr. Fider prescribing psychotropic medications for symptom relief (Exhibit B-22F).

> In July 2008, the claimant underwent psychiatric
> hospitalization secondary to suicidal ideation, with admitting
> psychiatrists diagnosing a bipolar disorder. During hospitalization,
> consulting mental health sources from Centerstone Mental Health
> Center additionally diagnosed an acute anxiety attack, a bipolar
> disorder, by history, and an anxiety disorder, prescribing
> medications, to which the claimant responded appropriately. She
> was thereafter discharged in stable condition (Exhibit B-8F).

(Tr. 179). Thus it is clear that the ALJ addressed the mental health records from Mr. Kerstetter and Dr. Fider, and Plaintiff's statements that the ALJ did not address the records of these care providers are incorrect.

As to Plaintiff's statement that the ALJ failed to address her mental health records from Ms. Henson, an advanced practice nurse who served as Plaintiff's primary care provider, Plaintiff appears to be correct that the ALJ did not specifically summarize Ms. Henson's records regarding anxiety and depression. The ALJ did, however, summarize Ms. Henson's records regarding Plaintiff's treatment for chronic lumbar pain (Tr. 178). Ms. Henson, as an advanced practice nurse, is not an "acceptable medical source," but rather is considered an "other source," who "cannot establish the existence of a medically determinable impairment." SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). The Social Security Administration's rulings note that "medical sources who are not 'acceptable medical sources,' such as nurse practitioners . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," and therefore states that the opinions from these sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03P, 2006 WL 2329939, at *3 (Aug. 9, 2006).

> Since there is a requirement to consider all relevant evidence in an
> individual's case record, the case record should reflect the
> consideration of opinions from medical sources who are not

> "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006).

The ALJ stated that he had made a "careful consideration of the entire record" before issuing his decision, and the ALJ clearly reviewed and considered Plaintiff's records provided by Ms. Henson, as he summarized part of her records in the decision (Tr. 178, 181). Furthermore, the ALJ did make specific findings regarding Plaintiff's alleged anxiety and depression, stating "upon judicial review of the evidence in its entirety, and in affording the claimant every benefit of doubt, I find she may experience some symptoms of depression and anxiety relative to diagnosed mental health impairments." (Tr. 185). Because of this finding, the ALJ limited Plaintiff to simple tasks, a work environment with infrequent changes, with rare contact with the public and only occasional contact with coworkers and supervisors (Tr. 185).

While the language of the ruling states that the ALJ should "generally" explain the weight given to opinions from other sources, such as the opinion of Ms. Henson, so that the claimant or subsequent reviewer can follow the ALJ's reasoning, the ruling also notes that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision . . . ." SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006). While Plaintiff notes that Ms. Henson's mental health records for Plaintiff were not addressed by the ALJ in the decision, Plaintiff has not argued that the ALJ had an obligation to recite each part of Ms. Henson's records. Plaintiff has also not provided any authority that

12

would show such an obligation exists. Merely noting that an ALJ has not mentioned something is not the same as arguing that it was error for the ALJ to do so. *See* Woods, 2009 WL 3153153, at *7 (noting that arguments not raised and supported in more than a perfunctory manner may be deemed waived). Given the lack of argument and authority on this issue, as well as the ALJ's recitation of some of Ms. Henson's records and the ALJ's specific findings regarding Plaintiff's anxiety and depression, I find the ALJ did not err when he failed to cite Ms. Henson's references to Plaintiff's anxiety and depression.

### 3. Plaintiff's Mental Health Assessments

Plaintiff argues that the ALJ improperly discounted the mental health assessments in the record provided by Dr. Brandau, Ms. Gore, and Mr. Kerstetter. Each of the assessments will be addressed as follows.

### a. Dr. Brandau's Assessment

Plaintiff argues that the ALJ improperly discounted Dr. Brandau's assessment based only on Plaintiff's ability to keep appointments with physicians and go to the grocery store and drugstore. Defendant argues that the ALJ did not improperly discount Dr. Brandau's assessment. Defendant contends that Dr. Brandau did not opine any limitations on Plaintiff's ability to work in excess of the ALJ's RFC determination, so the ALJ did not err in considering Dr. Brandau's opinion. Defendant further argues that because Dr. Brandau was a consultative examiner, the ALJ did not have to give her opinion any special weight or deference.

The opinions of examining physicians, unlike those of treating physicians, are "'entitled to no special degree of deference.'" *Cangialosi v. Comm'r of Soc. Sec.*, No. 13-10210, 2014 WL 1260711, at *5 (E.D. Mich. Mar. 27, 2014) (quoting *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). Similarly, there is no requirement that the ALJ give good reasons for the weight

afforded to the opinions of examining or consulting physicians who do not qualify as treating physicians. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007) ("the SSA requires ALJs to give reasons for only treating sources"). Because Dr. Brandau was not a treating physician, the ALJ was not required to give any specific weight to her assessment. The ALJ was required to consider Dr. Brandau's opinion, but the ALJ was not bound by her opinion. 20 C.F.R. § 404.1527. The ALJ also had no obligation to provide good reasons for discounting Dr. Brandau's opinion as a consultative examiner, although the ALJ did note that Dr. Brandau's own assessment provided that Plaintiff had logical and clear thought processes, remained cooperative and pleasant, responded appropriately and coherently to questions, was able to perform serial 3's and spelled the word "world" backwards, and was able to recall two out of three items after a three-minute delay. Dr. Brandau found that Plaintiff had no more than moderate limitations in any area of her mental health functioning. Regarding Plaintiff's contention that the ALJ improperly discounted Dr. Brandau's assessment on the basis that she was regularly able to go to the grocery store and drugstore and kept her medical appointments, the ALJ did so because this evidence of Plaintiff's daily activities conflicted with Plaintiff's own statement that she never left her home to visit friends or family because of her anxiety.

The ALJ did not have to accord the opinion of Dr. Brandau, as a consultative examiner, any amount of weight or specify his good reasons for discounting the opinion; nevertheless, the ALJ considered Dr. Brandau's opinion and provided reasons for discounting it. I therefore find that the ALJ did not err in discounting Dr. Brandau's assessment.

### b. Ms. Gore's Assessment

Plaintiff states that the ALJ found Ms. Gore's assessment to be of little weight because it was inconsistent with her clinical notes. Plaintiff does not actually argue that it was error for the

ALJ to assign this weight to Ms. Gore's assessment. The Court need not address arguments that have not actually been made, *see* Woods, 2009 WL 3153153, at *7, but I will infer that Plaintiff intended this statement to be an accusation of error by the ALJ.

Defendant contends that the ALJ both considered Ms. Gore's opinion and provided an adequate rationale for discounting it. Defendant contends that Ms. Gore is not an acceptable medical source because she is a nurse, and she is therefore unable to establish the existence of medically determinable impairments. Defendant contends that because she is not an acceptable medical source, Ms. Gore is not entitled to deference as a treating source, but rather, the ALJ has discretion to assign the weight given to her opinion. Defendant argues that the ALJ properly considered Ms. Gore's opinion, as he discussed the opinion before deciding not to grant it significant weight because it was conclusory and inconsistent with her own treatment notes.

As noted above with respect to the opinion of Ms. Henson, Ms. Gore as a nurse is an "other source" rather than an "acceptable medical source," and therefore she cannot establish that Plaintiff has any medically determinable impairments. SSR 06-03P, 2006 WL 23299939, at *2 (Aug. 9, 2006). While "the ruling *permits* an ALJ to give greater weight to an opinion from a nurse or similar source if circumstances justify that decision, such as when 'he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion,'" "under no circumstances does the ruling mandate that the most weight be given to someone who is not an acceptable medical source." *Linkhart v. Comm'r of Soc. Sec.*, No. 1:13-cv-288, 2014 WL 1302621, at *6 (S.D. Ohio Mar. 31, 2014) (affirming an ALJ's decision to discount a nurse's opinion because it was internally inconsistent and frequently at odds with the record).

15

Here, the ALJ noted that Ms. Gore's opinion and diagnosis of Plaintiff was conclusory and inconsistent with treatment records from other sources. The ALJ also noted that Ms. Gore was not an acceptable medical source before determining that her opinion was not entitled to significant weight. Because Ms. Gore's opinion, as an "other source," could not establish any medically determinable impairments, and because the ALJ noted that it was inconsistent with treatment records from multiple sources, I find that the ALJ did not err in discounting Ms. Gore's opinion.

### c.    Mr. Kerstetter's Assessment

Plaintiff also states that the ALJ dismissed the treating source assessment provided by Mr. Kerstetter, who found Plaintiff to be unable to perform even unskilled work. Plaintiff contends that the ALJ's basis for dismissal, that Mr. Kerstetter had not seen Plaintiff for three years, was cursory and "indicative of the failure of Administrative Law Judge to properly assess the evidence and make specific findings in this regard as required by 20 C.F.R. 404.1520a(e)(4)." [Doc. 12 at Page ID # 1112].

Defendant argues that as Plaintiff's counselor, Mr. Kerstetter is not an acceptable medical source. Defendant contends that Mr. Kerstetter cannot give a medical opinion and his opinion is not entitled to controlling weight as a treating physician. Defendant argues that the ALJ discussed Mr. Kerstetter's opinion before properly assigning it no significant weight, emphasizing the fact that Mr. Kerstetter had not treated or examined Plaintiff for the three years prior to him issuing his opinion as well as the fact that Mr. Kerstetter did not include any updated or accompanying treatment records to support his opinion as to Plaintiff's restrictions.

For the same reasons as above with respect to the opinion of Ms. Gore, I find that the ALJ did not err in discounting the opinion of Mr. Kerstetter, who was not an acceptable medical

source, and who had not seen Plaintiff in the three years before rendering his opinion and did not include any updated records to support his opinion.

### 4.    Regulations in the Listings for Chronic Health Impairments

Plaintiff's final argument in this section is that the ALJ failed to consider the regulations included in the Listings for chronic mental impairments, found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Pt. E.  Plaintiff contends that the ALJ should have considered these factors, including whether Plaintiff had a long history of repeated hospitalizations or outpatient treatment, whether Plaintiff maintained structured settings that allowed her to control or attenuate her symptoms; whether highly structured and supporting settings found in the home reduce the mental demands placed on Plaintiff and therefore reduce the symptoms and signs of her underlying mental disorder; and whether the effects of medication have modified the psychological function and symptoms of her mental disorder.  Plaintiff contends the ALJ erred by failing to consider these factors.

This argument is essentially the same as that made above regarding the ALJ's consideration of the factors in the Listings.  The Sixth Circuit has made it clear that an ALJ does not have to spell out the weight given to each factor in determining whether the Listings are satisfied.  *Bledsoe*, 165 F. App'x at 411.  Thus, as above, I find that the ALJ satisfied the requirements at step three of his analysis.

### D.    Consideration of Plaintiff's Severe Impairments

Plaintiff contends that the ALJ erred by failing to properly consider the combination of Plaintiff's severe impairments, specifically Plaintiff's extensive mental health treatment, her multiple diagnoses over time, and her back pain.  Plaintiff argues that the ALJ erred in discounting the assessment provided by Plaintiff's advanced practice nurse, T. Dianne Davis,

17

R.P.N., who Plaintiff contends provided the only assessment of Plaintiff's physical capabilities in the record in this case.

In response, Defendant contends that the ALJ properly considered the combination of Plaintiff's impairments and properly discounted the assessment of Ms. Davis, Plaintiff's treating nurse. Defendant again makes the argument that, as a nurse, Ms. Davis is not entitled to controlling weight because she is not an acceptable medical source. Defendant contends that the ALJ discussed Ms. Davis's opinion before granting it little weight because it was inconsistent with her own treatment records and appeared to rely heavily on Plaintiff's own reports of subjective symptoms. Defendant references the ALJ's notation that Ms. Davis's treatment notes for the same date that she completed the questionnaire stated that Plaintiff's pain and anxiety were well-controlled despite the severe limitations she opined in the questionnaire. Defendant argues that the ALJ's decision is supported by substantial evidence, and Plaintiff's arguments should fail because Plaintiff has not shown that her impairments result in limitations in excess of the RFC determination by the ALJ.

As noted several times previously, a nurse such as Ms. Davis is an "other source" who cannot establish that Plaintiff had any medically determinable impairments. *See* SSR 06-03P, 2006 WL 23299939, at *2 (Aug. 9, 2006). While Ms. Davis provided treatment to Plaintiff, she was not a treating *physician*, and therefore there is no presumption that her opinion will receive controlling weight. *See Starr v. Comm'r of Soc. Sec.*, No. 2:12–cv–290, 2013 WL 653280, at *5 (S.D. Ohio Feb. 21, 2013) (citing 20 C.F.R. § 404.1527(d)) ("The opinions of nurse practitioners, even treating nurse practitioners, are therefore not entitled to the controlling weight or deference to which the opinions of treating physicians are ordinarily entitled."). Here, the ALJ specifically considered Ms. Davis's opinion and assessment before deciding that the assessment did not merit

significant weight (Tr. 184). The ALJ noted that Ms. Davis's assessment relied heavily on Plaintiff's subjective report of severe symptoms and limitations, even though her treatment notes from the day Ms. Davis completed the assessment noted that Plaintiff's pain was well-controlled. The ALJ further noted that Ms. Davis as a nurse practitioner was not an acceptable medical source. The ALJ's decision to discount Ms. Davis's opinion was thus proper and supported by substantial evidence.

Plaintiff provides no authority to support her argument that the ALJ committed error in failing to include the limitations from Ms. Davis's assessment in the RFC determination. While Plaintiff agrees that Ms. Davis is not an acceptable medical source, Plaintiff appears to contend that Ms. Davis's assessment should have been given greater weight by the ALJ merely because it was the only physical assessment in the record before the ALJ. The Court is unaware of, and Plaintiff has failed to provide, any case law, regulation, or other authority to support Plaintiff's argument that an ALJ commits error in discounting a nurse's assessment merely because the assessment is the only physical assessment in the record. Because Plaintiff has not raised or supported this argument in more than a perfunctory matter, it fails. *See Woods*, 2009 WL 3153153, at *7 (citing *McPherson*, 125 F.3d at 995-96).

As to Plaintiff's contention that the ALJ failed to consider the combination of her impairments, this argument appears unfounded, as the ALJ specifically states that he reviewed "the evidence in its entirety" before making his RFC determination and before deciding that Plaintiff was not disabled (Tr. 186-87). Additionally, the ALJ found Plaintiff to have both physical and mental severe impairments at step two of his analysis (Tr. 178), and the ALJ specifically noted at step three that he had considered Plaintiff's mental impairments "singly and

in combination" (Tr. 180).   Thus, Plaintiff's argument that the ALJ failed to consider the combination of her impairments also fails.

### E.    The ALJ's Hypothetical Question Posed to the VE

Plaintiff argues that the ALJ failed to properly frame the hypothetical question he asked the VE because Plaintiff contends the hypothetical failed to include all of her limitations. Plaintiff specifically contends that the ALJ failed to include her depression, mania, anxiety, and GAF impairments in the hypothetical question he asked the VE during the hearing.  In response, Defendant contends that the ALJ's hypothetical question to the VE accurately described Plaintiff's RFC and vocational profile.

An ALJ may rely on a VE's response to a hypothetical question only if the question accurately portrays a claimant's physical and mental impairments.  *Ealy*, 594 F.3d at 516. However, the ALJ is only required to incorporate the limitations that he or she accepted as credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987)).

Plaintiff appears to be restating the same arguments in this portion of her brief that she previously raised, as she is essentially arguing that the hypothetical question was improper because it did not include limitations in the RFC which Plaintiff believes should have been included.  As noted previously, such arguments fail because the ALJ properly discounted the opinions providing the basis for these additional limitations.  Because the RFC determination was proper, the hypothetical question to the VE based on that RFC was also proper.

### F.    Conflict Between the VE's Testimony and the DOT

Plaintiff's final argument is that the ALJ erred by failing to investigate the inconsistency between the VE's testimony at the hearing and the DOT.  Plaintiff argues that the ALJ has an

obligation to elicit a reasonable explanation for any conflict between the DOT and the VE's testimony, and Plaintiff contends that the ALJ erred by making a "wholly inadequate" "cursory statement that the Vocational Expert's many years of vocational rehabilitative experience, job analysis and professional observations" provided the basis for his testimony [Doc. 12 at Page ID # 1117]. Plaintiff contends that this cursory statement does not resolve the conflict between the VE's testimony and the DOT.

In response, Defendant argues that the ALJ properly asked the VE to identify any conflicts between his testimony and the DOT. Defendant contends that the VE's response that he had deviated from the DOT, which is silent regarding a sit/stand option, was intentional and based on his experience in employment service and as a VE. Defendant contends that this is a reasonable explanation, as a VE's experience and expertise are permissible bases for resolving conflicts with the DOT. Defendant argues that the ALJ specifically resolved the conflict in his decision by noting that the VE's experience provided a reasonable explanation for the inconsistency.

The Social Security Administration's rulings provide guidance to ALJs for the use of VE testimony in making disability decisions, specifically that an ALJ must, before relying on a VE's testimony to support a disability determination or decision, "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [a VE] and information in the Dictionary of Occupational Titles . . . ." SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). The ruling further notes that a VE's testimony

> . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings

> level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Examples of reasonable explanations for conflicts between VE testimony and the DOT include, but are not limited to, situations where the information is not listed in the DOT (such as occupations not listed, specific jobs not listed, and particular job requirements not listed) but which is "available in other reliable publications," "obtained directly from employers, or from a VE's . . . experience in job placement or career counseling." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Finally, the ruling notes that the DOT provides only the "maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE . . . may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

Here, the ALJ asked the VE a hypothetical question as to what jobs would be available in the regional or national economy for a person of Plaintiff's age, education, past relevant work experience and the same RFC as Plaintiff, which included a 30-minute sit/stand option (Tr. 207). In response, the VE informed the ALJ that such a person would be able to perform jobs such as a candy packer (300 to 350 regional jobs; 75,000 jobs nationally), carpet trimmer (300 to 350 regional jobs; 100,000 jobs nationally), or operator in the technical industry (300 to 350 regional jobs; 75,000 jobs nationally) (Tr. 207-08). The ALJ then asked the VE, "is your testimony consistent with the DOT?" (Tr. 208). The VE replied, "No sir. The DOT does not envision any job with a sit/stand option. However, my experience tells me that not only are there jobs like that out there but there are also jobs that are set up with the sit/stand option to alleviate" (Tr. 208). In

his written decision, the ALJ noted the inconsistency between the VE's testimony and the DOT, stating

> Pursuant to Social Security Ruling 00-4p, the vocational expert's testimony is not fully consistent with the information obtained in the Dictionary of Occupational Titles (DOT), as the DOT does not consider the option of alternative positions. Rather, the testimony of the vocational expert is based [o]n his many years of vocational rehabilitative experience, job analysis and professional observations. As such, I find this to be a reasonable explanation for the inconsistency.

(Tr. 187).

The ALJ complied with the requirements of SSR 00-4p by asking the VE if his testimony was consistent with the DOT. The VE informed the ALJ of the inconsistency regarding the sit/stand option, which is not included in the DOT. The VE informed the ALJ that he knew that the jobs he had described permitted a sit/stand option, even though such an option was not included in the DOT, based on his experience. This satisfies the requirements of SSR 00-4p, which specially notes that a VE may be able to provide more information than what is in the DOT, and allows that such additional information may be provided on the basis of the VE's experience. Furthermore, courts in this Circuit have concluded "that a VE's testimony identifying jobs amenable to a sit/stand option did not contradict the DOT, but rather supplemented the information listed in the DOT." *See, e.g., Creque v. Astrue*, No. 4:10-CV-1528, 2011 WL 4054859, at *5 (N.D. Ohio Aug. 18, 2011) (citing *Walton v. Comm'r of Soc. Sec.*, No. 08-13273, 2009 WL 2905952, at *9 (E.D. Mich. Sept. 8, 2009)). Thus, I find that the ALJ did not fail to investigate the inconsistencies between the VE's testimony and the DOT as Plaintiff has alleged.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[2] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 11] be **DENIED**.

2) The Commissioner's motion for summary judgment [Doc. 13] be **GRANTED**.

3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*

SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this report and recommendation must be served and filed within 14 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).